James H. Boomer, J.
The decisive issue is whether the Rochester Housing Authority is exempt from the payment of real estate taxes on property acquired after the taxable status date, but before the date taxes were levied and became a lien.
Section 302 of the Real Property Tax Law provides that the taxable status of real property shall be determined annually as of a certain date and that real property “ shall be assessed * * * according to its condition and ownership as of such date.” Ordinarily, therefore, exemptions are determined on the basis of ownership on the taxable status date, and real property not previously exempt, acquired by an exempt organization after the taxable status date but before the lien date, is not exempt from taxes for that year (Matter of Suffern Boys School v. Assessor of Town of Ramapo, 267 App. Div. 919). Exceptions to this rule apply to property acquired by the State and the Federal Government, since they enjoy sovereign immunity from taxation (2 Opns. Counsel, SBEA No. 33; 2 Opns. Counsel, SBEA No. 34) and to property exempt under statutes that indicate a contrary intention (People ex rel. American Bible Soc. v. Commissioner of Taxes, 142 N. Y. 348; e.g., Real Property Tax Law, §§ 418, 476, subd. 6).
Section 52 of the Public Housing Law grants tax exemptions to a local housing authority. That section provides in part:
“ 1. An authority shall be exempt from the payment of (a) any taxes or fees to the state or any subdivision thereof * * *
“ 3. Except as to state projects, the property of an authority shall he exempt from all local and municipal taxes. A federal or municipal project consisting of land and one or more multiple dwellings leased by an authority for a term of not less than ten years shall be exempt from such taxes during the period of such lease. A municipality may (a) fix a sum which shall be paid to it annually by the authority in respect to each project; *207 or (b) agree that the authority shall not pay or be liable to pay any sum whatever in respect to a project or projects for any year of years; or (c) agree with an authority or government upon the sum to be paid by the authority for any year or years in respect of a project or projects, or accept of agree to accept a fixed sum or other consideration in lieu of such payment; provided, however, that the sum fixed, or agreed to be paid by the authority, for any year shall in no case exceed the sum last levied as an annual tax upon the property included in such project prior to the time of its acquisition by the authority; and provided, further, that the sum fixed, or agreed to be paid by the authority, for any year with respect to a federal project shall in no case exceed the sum last levied as an annual tax upon the property included in such project prior to the time of its acquisition by the authority or such greater amount as the federal government may permit.”
The tax exemption accorded housing authorities was first enacted by chapter 4 of the Laws of 1934 in the following language:
“ The property of an authority shall be exempt from all local and municipal taxes. An authority shall pay to the city a sum fixed annually by the city. Such sum shall not exceed in any year the sum last levied as an annual tax upon the property of the authority prior to the time of its acquisition by the authority.” (State Housing Law, § 74, subd. 3.)
Thus, the authority was to pay no more in taxes than had been last levied on the property before its' acquisition by the authority. This exemption was keyed not to the taxable status date, but to the date of acquisition by the authority, for the authority was to pay no more in lieu of taxes than the sum last levied as a tax prior to the acquisition of the property by the authority.
The exemption was carried over into the Public Housing Law enacted in 1939 (L. 1939, ch. 808), as subdivision 3 of section 52 in substantially the same form as it now appears. At that time, however, the only limitation upon the amount to be be paid by the authority in lieu of taxes was the sum last levied as a tax upon the property prior to its acquisition by the housing authority. Subdivision 3 was amended in 1943 (L. 1943, ch. 459) to provide that the sum to be paid by the authority for any year could not exceed the sum last levied as a tax upon the project prior to its acquisition by the authority, “ or. five per centum of the total annual income from rents of dwelling units included in any such project or projects, whichever shall be greater. ’ ’
*208 Subdivision 3 was last amended in 1944 by deleting the language limiting the amount to be paid in lieu of taxes to 5% of the annual rents and substituting instead the present limitation, ‘ ‘ of such greater amount as the federal government may permit.” (L. 1944, ch. 710.) The purpose of the 1944 amendment was explained in the draftsman’s note appended to the bill. It was to eliminate the 5% ceiling in connection with Federal projects to enable housing authorities to make more liberal payments to municipalities in lieu of local taxes, as permitted by the Federal Government.
The provisions of the Public Housing Law adopted in 1939 were undoubtedly written to take advantage of the subsidies provided by the United States Housing Act of 1937 (50 U. S. Stat. 888; U. S. Code, tit. 42, § 1401 et seq.). That act empowered the United States Housing Authority to make loans, capital grants and annual contributions to local public housing agencies to assist in maintaining low rentals, and it also required the local or State governments to make annual contributions to the local housing authority either, in the form of cash or tax exemp-. tion. The form of State or local contributions universally adopted was by way of tax exemption, and the United States Public Housing Administration permitted local housing authorities to make limited payments in lieu of taxes to the local governments (1949 U. S. Code Cong. Serv., p. 1550). In 1949, the United States Housing Act was amended to conform to the former practice of the Housing Administration by providing “ Every contract made pursuant to this Act for annual contributions for any low-rent housing project initiated after March 1, 1949, shall provide that no annual contributions by the [Federal] Authority shall be made available for such project unless such project is exempt from all real and personal property taxes levied or imposed by the State, city, county, or other political subdivisions, but such contract may authorize the public housing agency to make payments in lieu of taxes in an annual amount not in excess of 10 per centum of the annual ■shelter rents charged in such project ”. (63 ,U. S. Stat. 427, adding subdivision [h] to section 1410 of title 42 of the United States Code.)
The United States Housing Act requires a municipality to enter into an agreement with the local housing authority to provide for the local co-operation required by the act (U. S. Code, tit. 42, § 1415, subd. [7], par. [b]). The “ Cooperation Agreement ” entered into between the City of Rochester and the plaintiff, Rochester Housing Authority, provides in part:
*209 “ 3. (a) Under the constitution and statutes of the State of New York, all Projects are exempt from all real and personal property taxes levied or imposed by any Taxing Body. With respect to any Project, so long as either (i) such Project is owned by a public body or governmental agency and is used for low-rent housing purposes, or (ii) any contract between the Local Authority and the PHA for loans or annual contributions, or both, in connection with such Project remains in force and effect, or (iii) any bonds issued in connection with such Project or any monies due to the PHA in connection with such Project remain unpaid, whichever period is the longest, the Municipality agrees that it will not levy or impose any real Or personal property taxes or special assessments upon such Project or upon the Local Authority with respect thereto. During such period, the Local Authority shall make annual payments (herein called ‘ payments in Lieu of Taxes ’) in lieu of such taxes and special assessments and in payment for the Public services and facilities furnished from time to time without other cost or charge for or with respect to such Project.
“ (b) Each such annual Payment in Lieu of Taxes shall be made after the end of the fiscal year established for such Project, and shall'be in an amount equal to either (i) ten percent (10%) of the Shelter Bent charged by the Local Authority in respect to such Project during such fiscal year ”.
The city was empowered to enter into this agreement not to levy any real estate taxes upon the property of the authority by subdivision 3 of section 52 of the Public Housing Law (quoted above) which provides that the municipality may agree that a local housing authority “ shall not pay or be liable to pay any sum whatsoever in respect to a project or projects for any year or years; or * * * agree * * * upon the sum to be paid by the authority for any year or years in respect of a project or projects ”.
I conclude that the language and the legislative history of section 52 of the Public Housing Law indicate an intention that projects of a housing authority be exempt from the levy or imposition of real estate taxes from the time the authority becomes the owner of the real estate, regardless of the taxable status date. The exemption, when first enacted (L. 1934, ch. 4), limited payments in lieu of taxes to ‘ ‘ the sum last levied as an annual tax upon the property of the authority prior to the time of its acquisition by the authority.” The purpose of this limitation would be frustrated if the authority could be taxed on property acquired by it after the tax status date but before' the *210 date of the tax levy, for the resulting tax (either because of a higher assessment.or a higher tax rate) could be higher than the tax last levied on the property prior to its acquisition by the authority.
The interdependence between the TJnited States Housing Act and the Public Housing Law also indicates a clear purpose that' no taxes be levied upon property of an authority from the time the authority acquires the property. The Federal act requires that the property of an authority be exempt from all real estate taxes “ levied or imposed ”, but the authority may make payments in lieu of taxes not in excess of 10% of the annuhl rents charged. And section 52 of the Public Housing Law permits the municipality to agree upon the sum to be paid by the authority “ for any year or years ”, but the sum to be paid shall not exceed the amount “ the federal government may permit ”. The Federal Government permits payments for any yéar not in excess of 10% of the rents for that year. Again the purpose of the limitation would be frustrated if the authority had to pay moneys for taxes in any year in excess, of 10% of the rents for that year.
The purpose of the tax exemption is to reduce operating expenses of the project and to assist in maintaining low rentals. If an authority that acquired a project between the taxable status date and the date of levy were not exempt from the payment of taxes from the date of acquisition, it would have to pay for the first year of operation, not only the taxes levied, but also the 10% of the rentals for that year as required by the co-operation agreement.
The Rochester Housing Authority was exempt from the payment of any real estate taxes upon the project from the date of its acquisition of the project even though the date of acquisition was after the tax status date and before the lien date or date of levy of the tax.