OPINION OF THE COURT
Joseph J. Sedita, J.
This matter is brought on pursuant to article 7 of the New York State Real Property Tax Law. The petitioner herein seeks a reversal of a determination of the Assessment Board of Review of the Town of Tonawanda. The board had affirmed a determination by the Town Assessor that property leased by the petitioner from the Erie County Industrial Development Agency (hereinafter referred to as ECIDA) was subject to taxation. Under a provision of said lease, the petitioner is liable for any taxes imposed upon the premises.
The R. P. Adams Company is a manufacturing concern which has made its home in the Town of Tonawanda. The ECIDA is an agency established pursuant to article 18-A of the General Municipal Law. This enactment is known as the "New York State Industrial Development Agency Act” (General Municipal Law, § 850), and its stated policy is as follows: "It is hereby declared to be the policy of this state to promote the economic welfare, recreation opportunities and prosperity of its inhabitants and to actively promote, attract, encourage and develop recreation and industry through governmental action for the purpose of preventing unemployment and economic deterioration by the creation of industrial development agencies which are hereby declared to be governmental agencies and instrumentalities and to grant to such industrial development agencies the rights and powers provided in this article.” (General Municipal Law, § 852.)
One of the methods used by the ECIDA to encourage the expansion of business and commerce is to provide low-cost funding for capital construction and the elimination of property taxes for a number of years. The mechanics of this process involve the presentation of a proposal and application to the ECIDA. If the proposal is accepted, the agency sells tax-free bonds to cover the cost of the new construction. Because of the tax-free nature of the bonds, they can generally be sold at a relatively low rate of interest. The property to be expanded is deeded over to the ECIDA with the understanding that it will be deeded back to the company for $1 after a number of years. The company agrees to pay the cost of *376 paying off the bonds. Property taxes are eliminated because the property is now owned by a governmental agency. The tax-exempt status of the bonds and the property are the key to maximizing the financial attractiveness of expansion through the EGIDA. The tax-exempt status of the bonds and property is clearly set forth in section 874 of the General Municipal Law:
"(1) It is hereby determined that the creation of the agency and the carrying out of its corporate purposes is in all respects for the benefit of the people of the state of New York and is a public purpose, and the agency shall be regarded as performing a governmental function in the exercise of the powers conferred upon it by this title and shall be required to pay no taxes or assessments upon any of the property acquired by it or under its jurisdiction or control or supervision or upon its activities.
"(2) Any bonds or notes issued pursuant to this title, together with the income therefrom, as well as the property of the agency, shall be exempt from taxation, except for transfer and estate taxes.” (Emphasis added.)
Additionally section 412-a of the New York State Real Property Tax Law provides that industrial development agencies shall be entitled to exemption from taxation: "Real property owned by industrial development agencies enumerated in the general municipal law shall be entitled to such exemption as may be provided therein.”
Petitioner herein applied for this program in October of 1977. Its proposal for expanding its facilities was accepted by the agency, but the final "closing” of the transaction and transfer of title to the property did not take place until June 8, 1978. Since the Adams Company must reimburse the EGIDA for any property taxes which the EGIDA is required to pay, it has a vital interest in the tax liability of the EGIDA for this property.
June 1 is the "taxable status date” in the Town of Tonawanda. Subdivision 1 of section 302 of the Real Property Tax Law provides that "real property shall be assessed in the city or town in which it is situated according to its condition and ownership as of [the taxable status date]”. The Town of Tonawanda taxable status date was established as June 1, pursuant to section 3-1.0 of the Erie County Tax Act (L 1969, ch 682). On July 1, the tax becomes a lien on the real property. Because the transfer of title to the property herein *377 to the EGIDA took place after June 1, the Town of Tonawanda Assessor determined it to be taxable and he was affirmed by the Town Assessment Review Board.
The essential issue before this court can be simply stated: Is the EGIDA exempt from the payment of real estate taxes on property which was acquired after the taxable status date but before the tax lien date?
The general rule that has been followed by our courts is that tax exemptions are determined on the basis of ownership on the taxable status date, and property not previously exempt, acquired by an exempt organization after the taxable status date but before the lien date, is not exempt from taxes for that year. (Matter of Suffern Boys School [Treadway], 267 App Div 919; Lutheran High School Assn, of N. Y. City v City of New York, 29 AD2d 890.) The exceptions to this rule include property acquired by the State and the Federal Governments (see Rochester Housing Auth. v Sibley Corp., 77 Misc 2d 205, affd 47 AD2d 718), and property that is exempt under statutes that indicate a contrary intention (see People ex rel. American Bible Soc. v Commissioners of Taxes & Assessments of City & County of N. Y, 142 NY 348).
The court is called upon to determine if the situation at bar falls within one of the exceptions set forth above.
The modern view of the proper scope of governmental activity has greatly expanded in this century. We have moved to a view of government which encompasses the direct involvement of government in dealing with the economic problems of our State and nation. No better example of this new viewpoint can be found than in the policy statement of the New York State Industrial Development Agency Act (General Municipal Law, § 852, supra). The local agencies which have been born out of this act are clearly part and parcel of a State-wide program to maintain, expand and attract industry to our State. The EGIDA is not an isolated local agency. It is the local manifestation of that State-wide program. (See subdivision [1] of section 874 of the General Municipal Law which expressly states that the agencies are being created "for the benefit of the people of the state of New York”.) It is clearly an agency and instrumentality of New York State performing governmental functions. As an agency of the State, it would enjoy the same immunities of the State (see Glassman v Glassman, 309 NY 436; Rochester Housing Auth. v Sibley Corp., supra). Land owned by the State cannot be subject to *378 levy for the collection of unpaid taxes (see People v City of New York, 120 Misc 247, affd 207 App Div 822).
The property tax exemption is a key element in the attractiveness of the ECIDA program. The clear intent of the statute was the avoidance of tax liability through the creation of these agencies of the State. That intent would be frustrated if this court was to accept the strict interpretation urged by the respondents. Substantial justice and the mandate of this statute would not be achieved by imposing liability because the agency took title a few days after the tax status date.
For the reasons set forth above, we find that the ECIDA is exempt from tax liability for property acquired after the tax status date but before the tax lien date.
Accordingly, the petition is granted and the determination of the Town of Tonawanda Board of Assessment is reversed.