■ In the Matter of NORTHVILLE INDUSTRIES CORP., Respondent-Appellant, v BOARD OF ASSESSORS OF THE TOWN OF RIVERHEAD, Appellant-Respondent.—In consolidated proceedings pursuant to Real Property Tax Law article 7 to review the real property tax assessment of nine parcels of real property owned by the petitioner for the tax years 1981/1982 through 1985/1986, (1) the Board of Assessors of the Town of Riverhead appeals from an order and judgment (one paper) of the Supreme Court, Suffolk County (Canudo, J.H.O.), entered October 8, 1986, which reduced the assessments; and (2) the petitioner cross-appeals from so much of the same order and judgment which did not further reduce the assessments to the fair market value found by the petitioner's real estate appraiser, as limited by the maximum ceiling of value found by the petitioner's engineering appraiser as adjusted by the State Board of Equalization and Assessment ratios stipulated to by the parties, less the value of the "cost to cure" in the amount determined by the court and the value of the off shore platform determined by the court to be an illegal assessment.

Ordered that order and judgment is reversed, on the law, without costs or disbursements, and the matter is remitted to

the Supreme Court, Suffolk County, for a new determination in accordance herewith.

The petitioner owns approximately 263.3 acres of real property in the Town of Riverhead. The property, which has frontages on both Sound Avenue and the Long Island Sound, is zoned for industrial and agricultural use. The petitioner operates a bulk oil storage terminal facility on the northern section of the property which has a loading dock on the Long Island Sound as well as an offshore platform which is located approximately 1½ miles offshore in the sound. The storage terminal is located on nine separately designated tax lots in sections 6, 7 and 20 of the tax map and the offshore platform, which is built upon an easement granted by the State, is located in section 1 of the tax map. This latter section has no special, school or fire district. The petitioner commenced a proceeding for each tax year from 1981/1982 through 1985/1986 seeking to reduce the assessments on the nine tax parcels located on the mainland. The petitions alleged that the total land assessments of $2,820,000 combined with the improvements, totaling assessments of $27,741,100 were erroneous on the grounds of overevaluation, inequality, misclassification and illegality. The illegality specified was that the subject property and all other real property in the assessing unit were not assessed at a uniform percentage of value. The proceedings were consolidated and subsequently tried before a Judicial Hearing Officer.

During the trial both parties called experts who utilized the reproduction cost and market data approaches to value to arrive at conflicting conclusions concerning the fair market value of the subject premises. The appraisal and testimony of the experts for the Board of Assessors of the Town of Riverhead (hereinafter the board) were characterized by several evidentiary deficiencies which vitiated the probative value of the evidence of value adduced by the board. Both of the board's experts violated the cardinal principle of valuation that real property should be valued according to its condition on each tax status date (RPTL 302 [1]; *Matter of Adirondack Mountain Reserve v Board of Assessors,* 99 AD2d 600, *affd* 64 NY2d 727). In addition these experts who separately valued the land and the improvements by the market data approach also failed to make necessary adjustments when comparing the subject parcel to the comparables *(see, Latham Holding Co. v State of New York,* 16 NY2d 41, 45; *Matter of Habern Realty Co. v Tax Commn.,* 102 AD2d 302, 306-307). Where adjustments were made, the board's experts failed to suffi-

ciently account for the adjustments by the requisite facts, figures and calculations in either the appraisal or trial testimony *(see,* 22 NYCRR 202.59 [g] [2]). Furthermore, the real estate appraiser who testified concerning the reproduction cost approach was not qualified to do so as he was neither an architect, engineer nor builder *(see, Matter of Semple School for Girls v Boyland,* 308 NY 382, 384; *Matter of S.S.&K. Realty Corp. v Finance Admin.,* 82 AD2d 808, 811). For these and other evidentiary deficiencies the trial court should have granted the petitioner's motion to strike the board's appraisal *(see,* 22 NYCRR former 678.1 [e], now 22 NYCRR 202.59 [h]; *Matter of Rusciano & Son Corp. v Roche,* 118 AD2d 861; *Matter of County Dollar Corp. v City of Yonkers,* 97 AD2d 469, *lv dismissed* 61 NY2d 603, 759, *rearg denied* 61 NY2d 905; *Matter of Stoneleigh Parkway v Assessor of Town of Eastchester,* 73 AD2d 918, *lv denied* 49 NY2d 705).

Although the Judicial Hearing Officer did not grant the petitioner's motion to strike the board's experts' testimony, it did not give credit to their conclusions as to value. Instead, the Judicial Hearing Officer relied upon the petitioner's experts' unadjusted range of value of $2.19 to $3.90 per barrel for the comparable oil-storage facilities to arrive at a $3 per barrel or $15,308,427 fair market value for the subject premises. Because the value selected by the Judicial Hearing Officer was based upon the unadjusted comparables and was in excess of the adjusted range of comparable market values of $1.80 per barrel to $2.79 per barrel found by the petitioner's experts, it cannot be sustained. It is a settled principle that "[s]ales of other parcels, where used as criteria in the evaluation of the subject property, need to be adjusted to differences between one another and between each of them and the subject property" *(Latham Holding Co. v State of New York, supra,* at 45; *see also, Matter of Habern Realty Co. v Tax Commn., supra).* In view of our holding that the board's evidence of value lacked probative value, the conclusion of value reached by the petitioner must be given full weight. Given the adjusted range found by the petitioner's experts, we find the $2.50 per barrel or $12,757,023 value proposed by the petitioner's experts to be the fair market value of the subject premises *(see, Matter of City of New York [Reiss],* 55 NY2d 885; *Matter of Dennison Holding Corp. v Finance Adm'r of City of N. Y.,* 105 AD2d 700, 701; *Matter of City of New York [Jomar Real Estate Corp.],* 94 AD2d 724, *affd* 61 NY2d 843).

The record establishes that during the tax years under review, the subject property was not in compliance with

Suffolk County Sanitary Code article 12, and the petitioner correctly asserts that the full cost of compliance should be deducted from each of the tax year's assessments on the subject property. It is axiomatic that in assessment review proceedings, the value at which real property may be taxed has been equated with market value *(Grant Co. v Srogi,* 52 NY2d 496, 510; *Matter of Hellerstein v Assessor of Town of Islip,* 37 NY2d 1, *mot to amend remittitur granted* 39 NY2d 920). Given this principle, it is reasonable to assume that a knowledgeable buyer who desired but is not compelled to purchase the property would have been unwilling to do so unless either the work necessary to comply with the code was done or there was an abatement in the purchase price *(cf., Karch v State of New York,* 52 AD2d 1044). Consequently, we find that the Judicial Hearing Officer should have deducted the full cost of compliance from each annual assessment. Furthermore, inasmuch as an assessment fixes value as of each taxable status date and each annual assessment is separate and distinct from each other, the full cost of compliance should be deducted from the total assessments for each of the tax years under review *(see, Matter of Woolworth Co. v Tax Commn.,* 20 NY2d 561; *People ex rel. Hilton v Fahrenkopf,* 279 NY 49; *Matter of Phelps Dodge Indus. v Kondzielaski,* 131 AD2d 675, 677, *lv denied* 70 NY2d 613). Finally, we note that contrary to the board's contention, the Judicial Hearing Officer properly accepted the cost estimate which had been prepared by employees of the petitioner. Since the reasonableness of this estimate was independently verified by the expert who was available for cross-examination, the estimate was admissible *(see, Hambsch v New York City Tr. Auth.,* 63 NY2d 723, 725-726; *People v Wilson,* 133 AD2d 179, 184; *Matter of Chrysler Realty Corp. v Foley,* 74 AD2d 847, 848). Therefore, we conclude that each tax year's assessment should be reduced by the $2,533,500 estimated cost of compliance with the code.

At the time of the trial the petitioner also sought to have the assessment further reduced by the value attributable to the offshore platform. The petitioner moved for summary judgment claiming that pursuant to RPTL 502, the assessments on the offshore platform were illegal because neither the assessment nor the tax bills described this improvement with sufficient particularity as to identify the property which was being assessed. The petitioner further argued that pursuant to RPTL 550 (7) (b) any assessment on this property for school or other districts was unlawful because the platform was located on property beyond any school or special district.

The board moved to dismiss these claims on the ground that they were not alleged in the petition. The Judicial Hearing Officer denied the motion.

It is well settled that once the assessment roll is established, it is presumed to be correct and free of error (see, *Matter of Sterling Estates v Board of Assessors,* 66 NY2d 122, *rearg denied* 66 NY2d 1036; *Farash v Smith,* 59 NY2d 952) and the taxpayer has the burden to explain why and to establish how his property was improperly assessed (see, *Matter of Sterling Estates v Board of Assessors, supra; Matter of Barnum v Srogi,* 54 NY2d 896). This means that a taxpayer cannot merely assert conclusions of illegality or error in his petition; he must indicate where error exists (see, RPTL 524 [3]; 706; *Matter of Sterling Estates v Board of Assessors, supra; Matter of Grossman v Board of Trustees,* 44 AD2d 259, 265). Inasmuch as the only illegality specified in the petitions did not concern the assessments on the offshore platform, the alleged violations of RPTL 502 were improperly considered in the instant proceedings (see, e.g., *Matter of Sterling Estates v Board of Assessors, supra*).

Contrary to the petitioner's contention, even though the violation of RPTL 502 constituted a jurisdictional defect, the petitioner was not excused from the necessity of making a timely protest as required by RPTL article 7. Having failed to assert the claim concerning the violation of RPTL 502 in the petitions, it could not do so at the time of trial (see, *Matter of Sterling Estates v Board of Assessors, supra; Matter of Mayflower Realty Corp. v Tax Commn.,* 14 NY2d 640; *Oak Hill Country Club v Town of Pittsford,* 264 NY 133; *Samuels v Town of Clarkson,* 91 AD2d 836; *Buffalo Hebrew Christian Mission v City of Syracuse,* 33 AD2d 152, 156; *cf., People ex rel. Erie R. R. Co. v State Tax Commn.,* 246 NY 322, 325; *People ex rel. New York Cent. R. R. Co. v Graves,* 271 App Div 728, 737, *affd* 305 NY 613). In view of this conclusion, we decline to address the merits of the contention concerning the legality of description of the platform on the tax bill.

However, the allegation concerning the assessments for the school district presents a different situation. Since the record indicates that the section of the tax map upon which the platform is located contains no school or special districts, any assessment for such districts would be null and void (see, RPTL 550 [7] [b]; *Van Voorhis v County of Monroe,* 262 App Div 950, *affd* 288 NY 138). This contention may be raised at any time (see, *Van Voorhis v County of Monroe, supra; cf., Oak Hill Country Club v Town of Pittsford, supra*). Consequently,

the board should reduce future assessments by the amount attributable to the assessment on the offshore platform for any school or special district taxes.

Nevertheless, we find that the petitioner has not met its burden of establishing an entitlement to a refund of these taxes for the tax years under review. When taxes are paid under mistake of law with actual or constructive knowledge of the facts, the taxpayer is required to demonstrate that payment was made involuntarily *(see, City of Rochester v Chiarella,* 58 NY2d 316, 323). Since the petitioner moved at the time of trial for summary judgment on the ground that the value of the platform should not be included in the total assessment, it is apparent that the petitioner had actual knowledge of the facts which allegedly made the assessments on the offshore platform unlawful. As no other evidence was adduced concerning the circumstances under which the taxes were paid and the petitions did not assert any claim concerning the offshore platform, the petitioner has not rebutted the inference that the taxes were voluntarily paid with knowledge of the facts.

We have considered the board's remaining contentions and find them to be without merit. Thompson, J. P., Bracken, Eiber and Spatt, JJ., concur.