### In re BROADWAY 704–706 ASSOCIATES, Debtor.

### No. 92 B 21226.

United States Bankruptcy Court, S.D. New York.

May 7, 1993.

Nutovic & Lichtenberg, New York City, for debtor.

Bruce H. Roswick, New York City, for Continental Realty Credit Inc. and Westinghouse Credit Corp.

O. Peter Sherwood, Corp. Counsel of the City of New York, New York City (Kathleen J. Cahill, of counsel), for City of New York.

### DECISION ON OBJECTION TO CONFIRMATION OF CONTINENTAL PLAN

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Chapter 11 debtor and the City of New York, Department of Finance (the "City") object to the confirmation of the liquidating Chapter 11 plan of reorganiza-

tion filed by the first mortgagee, Continental Realty Credit, Inc. ("Continental") and supported by Westinghouse Credit Corp. The plan calls for the payment of the City's real property taxes as a seventh priority prepetition unsecured claim under 11 U.S.C. § 507(a)(7)(B), which may be paid over a period not exceeding six years in accordance with 11 U.S.C. § 1129(a)(9)(C). The City contends that its property tax claim is a post-petition administrative claim under 11 U.S.C. §§ 503(b)(1)(B)(i) and 507(a)(1), which must be paid in full in accordance with 11 U.S.C. § 1129(a)(9)(A) before the payment of any secured claim that the mortgagee or other secured creditor may have against the debtor's real property.

## FACTS

1. On May 4, 1992, the debtor filed with this court a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code and continued in operation and management of its property as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2. The debtor is a general partner of a limited partnership which owns and operated a commercial and residential loft building located at 704–706 Broadway, New York, New York.

3. The debtor defaulted under Continental's first mortgage, which is in the principal amount of $6,009,500.00.

4. The debtor has lost the exclusive right to file a plan as expressed in 11 U.S.C. § 1121(b), with the result that Continental has filed a creditor's plan which is based on the sale of the property and the distribution of all the proceeds to the debtor's creditors.

5. The City has filed a claim for post-petition real property taxes in the sum of $185,925.49 as an administrative expense pursuant to 11 U.S.C. §§ 503(b)(1)(B)(i) and 507(a)(1), and an administrative claim for unpaid prepetition real property taxes in the sum of $119,333.90 pursuant to 11 U.S.C. § 507(a)(7)(B).

6. The debtor's plan classifies both of the City's real property tax claims as an administrative priority under 11 U.S.C. § 507(a)(7).

7. After the filing of the debtor's Chapter 11 petition on May 4, 1992, City property taxes became due and payable on July 1, 1992 and January 1, 1993 in the sum of $185,925.49. The tax status date for these taxes was January 5, 1992, which was approximately four months before the debtor's Chapter 11 petition was filed.

## DISCUSSION

The City argues that the real property taxes in the sum of $185,925.49, which became due and payable on July 1, 1992 and January 1, 1993, after the debtor filed its Chapter 11 petition, were not prepetition taxes which arose on the prepetition tax status date of January 5, 1992. Accordingly, the City reasons that these taxes, which came due after the petition date, are post-petition administrative expenses under 11 U.S.C. §§ 503(b)(1)(B)(i) and 507(a)(1).

Pursuant to state law, the tax status of real property is to be determined each year and the valuation of the property as of the applicable valuation date. N.Y.Real Prop.Tax Law § 302(1) (McKinney Supp.1993). In accordance with this mandate, the City has determined that a tax status date would occur on January 5th of each year. New York City Charter § 1507. This is a valuation date with respect to the property for prospective purposes. The taxes that are based on this valuation became due on July 1st and January 1st after the tax status date. New York City Charter § 1519(2). A lien is created and the taxes start to run with the land as of the tax due dates and not on the tax status date. The lien that arises on the tax due dates has no relation to the January 5th tax status date, because at most, the City has an expectation that at the future tax due dates, the amount as yet undetermined will be due on the property. *Makoroff v. City of Lockport New York*, 916 F.2d 890, 895–96 (3d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991).

The facts in this case are similar to those in *Lincoln Savings Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n, Inc.,* 880 F.2d 1540 (2d Cir. 1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990). In the *Parr Meadows* case, the tax status date was June 1, 1979 and the real estate taxes for the fiscal year 1979–1980 were payable on the tax due date of December 31, 1979. The fiscal year began on June 1st. The Chapter 11 petition was filed on June 12, 1979. The Second Circuit held that the automatic stay prohibits the creation of a local tax lien upon real property unless the taxing authority had a prepetition interest in the real property. *Id.* The *Parr Meadows* court concluded that the local taxing authority acquired an interest in the subject property on the tax status date and such interest was sufficient to meet the requirements of 11 U.S.C. § 546(b). Therefore, the lien that was created on the tax due date of December 31, 1979 related back to the tax status date of June 1, 1979, which was prior to the petition date of June 12, 1979, and did not violate the automatic stay that was imposed subsequently on the Chapter 11 filing date on June 12, 1979. *Parr Meadows,* 880 F.2d at 1546–47. However, for fiscal years after June 1, 1979, the automatic stay prevented the perfection of tax liens because 11 U.S.C. § 546(b) is a one-time exception for the creditor who has not yet perfected its lien. *Id.* at 1547.

In the instant case, the tax status date January 5, 1992, gave the City sufficient interest in the subject property to support a section 546(b) relation back for the tax liens that arose on the tax due dates of July 1, 1992 and January 1, 1993 for the fiscal year 1992–1993, notwithstanding that the Chapter 11 petition was filed on May 14, 1992. *Id.* at 1546–47.

The City does not claim a prepetition lien for the real property taxes for the fiscal year commencing July 1, 1992. Instead, the City apparently seeks to waive its lien and claims a post-petition administrative claim under 11 U.S.C. § 503(b)(1)(B)(i), which is a first level unsecured administrative priority expense under 11 U.S.C. § 507(a)(1). Unlike a secured lien which may be crammed down under 11 U.S.C. § 506(a) and may be limited by 11 U.S.C. § 1129(b)(2)(A)(ii), to the allowed amount of such claim, a post-petition first priority administrative expense must be paid in cash in full at confirmation in accordance with 11 U.S.C. § 1129(a)(9)(A). Understandably, the City would prefer to have its real property tax claim for the fiscal year commencing July 1, 1992 paid in full in cash rather than possibly crammed down, if senior liens on the subject property are not completely satisfied. The City may not have it both ways; it may not claim the right as a lien creditor when it is desirable, and the status as an unsecured post-petition administration claimant under 11 U.S.C. § 507(a)(1) when it chooses. *See In re Bonhard,* 145 B.R. 23 (Bankr.N.D.Ohio 1992); *In re Reichert,* 138 B.R. 522, 527 (Bankr.W.D.Mich. 1992). Under the authority of *Parr Meadows,* the City holds a perfected prepetition lien for the fiscal year commencing July 1, 1992. Should there be insufficient collateral to satisfy this prepetition lien, the deficiency would then qualify as an unsecured post-petition administration expense pursuant to 11 U.S.C. § 503(b)(1)(B)(i) and 507(a)(1).

In any event, the City's real estate tax claim for the fiscal year commencing July 1, 1992 may not be classified as a prepetition unsecured seventh priority tax claim under 11 U.S.C. § 507(a)(7)(B) which may be paid out over a period of six years in accordance with 11 U.S.C. § 1129(a)(9)(C). Thus, the City's objection to the confirmation of Continental's plan is sustained and confirmation is denied.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(L).

2. The City's real property tax claim for the fiscal year commencing July 1, 1992 should be classified as a prepetition lien claim against the debtor's real estate. If there is a deficiency in paying the full

amount of the City's lien, the deficiency shall be classified as a post-petition first priority administration expense pursuant to 11 U.S.C. § 503(b)(1)(B)(i).

3. The plan's classification of the City's real property tax claim for the fiscal year commencing July 1, 1992 as an unsecured seventh priority administration expense under 11 U.S.C. § 507(a)(7)(B) is improper.

4. The City's objection to the confirmation of Continental's plan of reorganization is sustained and confirmation is denied.

SETTLE ORDER on notice in accordance with the foregoing.