891 F.2d 286
 58 USLW 2374, 21 Collier Bankr.Cas.2d 1337
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
FORSYTH COUNTY & CITY OF WINSTON-SALEM TAX COLLECTOR,
Plaintiff-Appellee,
v.
Joseph W. BURNS, Trustee for B & H Piggyback Service, Inc.,
Defendant-Appellant.
 No. 88-1359.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 8, 1989.
Decided: Nov. 24, 1989.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Richard C. Erwin, Chief District Judge. (CA-88-540)
 W. Joseph Burns, Robert E. Price, Jr. (Burns & Price, on brief), for appellant.
 Jonathan Virett Maxwell, Assistant County Attorney, for appellee.
 Before K.K. HALL and WILKINS, Circuit Judges, and JAMES H. MICHAEL, Jr., United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 This case comes to the court on appeal from a decision of the United States District Court for the Middle District of North Carolina. In its decision, the district court reversed a finding of the bankruptcy court, and held that certain personal property ad valorem taxes due to be paid to the appellee were in fact an administrative expense under 11 U.S.C. § 503(b). Also presented is the issue of whether the interest thereon is entitled to the same administrative expense priority.
 
 
 2
 The case presents a deceptively simple question for resolution. The material facts are not in disupte, genuine or otherwise. The chronology of he facts is one of the critically important factors in this case. The controversy is between the tax collector for Forsyth County and the City of Winston Salem and the Trustee for B & H Piggyback Service, Inc. ("the debtor"). On February 21, 1985, the debtor filed a petition under Chapter 11 in Bankruptcy, which case was on July 25, 1985, converted to a Chapter 7 proceeding, the Chapter 11 proceeding not having produced a confirmed plan of reorganization.
 
 
 3
 The outcome in this case hinges on whether certain of the appellant's unpaid taxes are classified as an "administrative expense" or not. If they are so classified, then the taxes will probably be recovered from the estate; if they are not, the chances of payment to the appellee ar slim at best. Whether or not the taxes are classified as an administrative expense is in turn a function of when the tax obligationwas incurred. If it followed the filing of the bankruptcy petition then generally it is an administrative expense; if it preceded the petition, it is generally relegated to a seventh priority claim.
 
 
 4
 The Bankruptcy Code establishes a priority scale by which payments from the bankruptcy estate are made. 11 U.S.C. § 507. Under § 507 administrative expenses are given first priority over all other claims against the estate. 11 U.S.C. § 507(1)(1). Conversely, most pre-petition taxes are given seventh priority status. 11 U.S.C. § 507(a)(7)(A)(i). Administrative expenses are not exhaustively defined in the Code, but they do include "any tax incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title...." 11 U.S.C. § 503(b)(1)(B)(i).[1] (Emphasis supplied.) The phrase "incurred by the estate" in § 503(b)(1)(B)(i) limits the application of this section to post-petition liabilities. See United States v. Friendship College, 737 F.2d 430, 432 (4th Cir.1984). Thus for a tax to be classified as an administrative expense it must have been "incurred" by the estate after the filing of the petition.
 
 
 5
 The Bankruptcy Code is silent as to when precisely a tax obligation is "incurred." When state taxes are involved the question is obviously one of state law. The answer to the question of when the taxes were incurred in this case, and thus whether they are administrative expenses or not, lies in the chronology of taxation in North Carolina. After considerable skirmishing by the parties before it, the bankruptcy court ultimately found that the taxes in this case should be classified as a seventh priority tax claim. The district court reversed, finding that the taxes were indeed administrative expenses incurred after the filing of the petition.
 
 
 6
 This court's decision in Friendship College makes it clear that the crucial distinction is whether the taxes were incurred pre- or post-petition. Because the analysis and underlying rationale of Friendship College bears on the resolution of the issues in this case, an understanding of the fact pattern in that case is important. There are factual differences between Friendship College and this case, but they do not affect the application of the reasoning of Friendship College to this case.
 
 
 7
 In Friendship College, the taxes at issue were those withheld from employees' paychecks by the employer, pursuant to the withholding requirements of federal income tax and other withholding programs, usually identified as "FICA" withholdings. Hereinafter, for ease of reference, all such withholdings shall be referred to as FICA withholdings. Friendship College dealt with the proble which arose when FICA withholdings were made by Friendship College after it had filed its petition in bankruptcy under Chapter 11 of the Code, and while the College was in the process of reorganization under Chapter 11. Unquestionably, both the amount of tax due and the obligation to pay that amount to the Internal Revenue Service arose post-petition.
 
 
 8
 As discussed in Friendship College, the obligation to withhold, generally stated as a mandate, is found in the federal tax laws. Under these laws it is obvious that no claim to payment can be asserted by the taxing authority until several conditions are met. First, there must be employees paid within the appropriate time. Secondly, the wages so paid determine the withheld amount and thus the amount of tax due. Third, the quarter in which the wages are paid must expire, as well as the grace period allowed for such payment. Absent extraordinary circumstances, only after all three of these conditions are met can it be said that a claim for payment may be asserted. While the amount of the claim can be determined when deduction from the paycheck is made, thus satisfying the first two conditions, no claim can be asserted against the taxpayer until the third condition is met.
 
 
 9
 In Friendship College, the court teaches that such tax claims, arising post-petition, are to be treated as administrative expenses. While that opinion does not deal explicitly with the FICA withholding pattern, it obviously considered the pattern outlined above in reaching its decision. In Friendship College, the amount of tax ultimately to be paid could be, and was, determinable when the deduction from the paycheck was made, though payment at that moment was not required, nor absent extraordinary circumstances, could payment then have been demanded. As set out infra, the timing of this computation of amount due presents an additional factual difference from the instant case.
 
 
 10
 The critical issue in this appeal, whether the taxes were a post-petition liability, is to be determined by considering the provisions of North Carolina law, so as to determine when the tax actually is a claim which may be asserted agains the taxpayer, in this case the debtor's estate. Such a determination of the time when the tax should properly be considered a claim against the taxpayer's estate then must be considered in light of the provisions of §§ 503 and 507.
 
 
 11
 The property of the debtor potentially subject to the local ad valorem personal property tax was required by North Carolina statutory law to be reported by the owner to the local taxing authority, showing its "value, ownership, and place of taxation" determined as of January 1, 1985. N.C.Gen.Stat. § 105-285(b) (1987). Further provisions of North Carolina law require that the tax itself be determined on or before July 1 of each year, at such time as the local governing body sets the tax rate. The setting of the rate as of July 1 of each year is consonant with the fact that local governing bodies n North Carolina operate on a fiscal year running from July 1 of each year to Jne 30 of the subsequent year. N.C.Gen.Stat. § 159-13, 159-8. In this case, the governing bodies of the two jurisdictions set the tax rate on July 1, 1985. After the tax rate is set, the taxing authority applies that rate to the value of the personalty within its jurisdiction, as shown by the listing of the preceding January 1. By this mechanism, the tax owed is established. After the tax total is thus determined, bills are dispatched to the appropriate taxpayers. A further provision of North Carolina law states that the tax is due and payable on September 1 of each year, with other provisions not material to the resolution of the issue here presented. N.C.Gen.Stat. § 105-360. Appellant argues that the listing on January 1 marks the point in time when the taxes are incurred; the appellee argues that the taxes are not incurred until no earlier than the setting of the tax rate as of July 1.
 
 
 12
 North Carolina Gen.Stat. § 105-285(b) states only that "the value, ownership, and place of taxation of personal property, both tangible and intangible, shall be determined as of January 1." Notable in that language is the absence of any indication that any tax is due. The section only requires administrative, information gathering functions. Obviously, such administrative tasks are a necessary step in order for the tax collector and the governing body of the particular locality to expedite their work in determining what an appropriate tax may rate may be, so as to generate appropriate revenues for the maintenance of governmental functions during the fiscal year, but they are only a step. The language of the statute relating to the determination of value, ownership and place of taxation as of January 1 of each year does not, under the usual canons of construction, giving words their ordinary meaning, allow for an interpretation that would say that a tax is "imposed," or "incurred" as of that date. That this is a proper construction is borne out by the remaining provisions of the North Carolina law concerning such taxation, to the effect that the tax rate shall be set as of July 1 of each year, using, of course, the information developed by what might be called the "inventory" of such property as of January 1 of each year. Until that rate is set on July 1 of each year, the liability for the taxes is neitherinchoate nor unliquidated; it simply is impossible to know what the tax may be.[2]
 
 
 13
 This whole pattern indicates with some clarity that the obligation to pay taxes in any amount is not imposed on January 1 of the year. Subsequent acts must be taken before any conclusion can be reached as to what amount, if any, may be owed by the taxpayer.
 
 
 14
 The construction of local taxation laws always presents a problem, but in this case the patters so clearly established in North Carolina law seems to admit of only once conclusion, to wit, that durig the period from January 1 to July 1 of each ear there can be no finding that a tax has been "incurred," is known, or is ascertainable in amount. This conclusion indicates that at the time of the filing of the Chapter 11 petition on February 21, 1985, there was no tax which could be claimed to be due by the tax collector.
 
 
 15
 While N.C.gen.Stat. § 105-366 provides for an attachment to secure personal property taxes during the period between the January 1 listing and when the taxes are due,[3] it is clear that this creates only a levy or attachment under the circumstances spelled out in the statute.[4] First, the statute applies only to those taxpayers who the tax collector reasonably believes may become insolvent or transfer their property out of the jurisdiction; thus, as to all others, the statute has no effect and stands for no general principal creating an inchoate obligation. The statute recognizes that between the time of the listing and the time at which the tax rate is set the amount of any tax is undetermined, and provides a method for overcoming this obstacle. Had the tax collector exercised this right at some time after January 1 and before February 25, the date of the filing of the petition under Chapter 11, a different result might well have come about, but the record discloses no such action by the tax collector. In sum, this statute only reinforces the fact that absent extraordinary circumstances not present here, no obligation of any sort is incurred until the tax rate is determined.
 
 
 16
 Collier on Bankruptcy deals with 11 U.S.C. § 503(b)(1)(B), on which the trustee relies in part in his arguments. Collier states, "It would seem likely that all that was meant was that to the extent a debtor's prepetition liability became a tax after the petition, it would not for that reason be given administrative expense status under § 503(B)(1)(B)." (Emphasis added.) See In re Scrap Disposal, Inc., 24 B.R. 178 (Bankr.S.D.Cal.), aff'd, 38 B.R. 765 (9th Cir.1984), citing 3 Collier on Bankruptcy, § 503.04[b], at 503-22 and 23 (15th Ed.). In this case, the North Carolina law does not provide a "pre-petition liability" as of the "inventory" on January 1 of each year. It becomes a debtor's liability as a tax claim as of July 1, 1985, which, of course, is well after the filing in this case of the Chapter 11 proceeding.
 
 
 17
 Such an analysis comports with the analysis of this court in Friendship College, as set out in detail on this point, supra. There the claim arose because of the obligation of the estate to have paid over FICA and income tax withholdings from employee paychecks, all of which became due from the College after the proceeding in bankruptcy had commenced. In Friendship College we held that such taxes were in fact taxes which became due after the petition and were properly classified as administrative expenses. The court went on to conclude that the word "estate" in § 503(b)(1)(B)(i) implies post-petition liabilities.
 
 
 18
 One of the words more regularly tortured in local taxation, principally because of the different patterns in different localities, is the word "assessment." The North Carolina statute makes no reference to assessment as of January 1 in each year. Certainly, nothing in the statute authorizing the "inventory" of personal property as of January 1 each year authorizes or even mentions an assessment of taxes as of that date. In the more usual interpretation of the word "assessment," the reference is to the acts of the tax collectors and the governing bodies by which an amount of tax is determined and "assessed" against the particular property. It can scarcely be debated that this occurred in the instant case on July 1, 1985.
 
 
 19
 In summary on this point, it is sufficient to say that both the North Carolina statutory pattern and the case law support the proposition that the claim under consideration here is a claim which arose after the petition in Bankruptcy for Chapter 11 treatment.[5]
 
 
 20
 An additional contention of the appellantis that interest on the taxes should not receive administrative expense priority. This seems squarely in conflict with the holding in Friendship College, 737 F.2d at 423-433. The appellant invites this court to overrule its holding in Friendship College, an invitation which this court rejects.
 
 
 21
 For the reasons indicated, the decision of the court below is
 
 
 22
 AFFIRMED.
 
 K.K. HALL, Circuit Judge, dissenting:
 
 23
 I respectfully dissent because I believe the taxes at issue in this case are properly characterized as having been incurred on January 1, 1985. As such, the claim of the tax collector would be relegated to a seventh priority tax claim under 11 U.S.C. § 507(a)(7)(B)(i), rather than an administrative expense under 11 U.S.C. § 503(b).
 
 
 24
 In In Re Point Restaurant and Oyster Bar, 86 B.R. 252 (Bky.N.D.Fla.1988), the bankruptcy court was faced with a nearly identical case. In ruling that the disputed tax was incurred pre-petition, the court was persuaded by Florida's statutory imposition of a lien on the taxable personal property as of the pre-petition date of its valuation despite the fact that determination of the actual tax due was not made until after the bankruptcy petition was filed. On the basis of this pre-petition lien, the court felt that "[t]he specific property involved herein came into the debtor estate already subject to the tax." Id. at 254. This reasoning is applicable here.
 
 
 25
 On January 1, 1985, the debtor's personal property was assessed. Unlike the Florida statutes involved in Oyster Bar, North Carolina law does not automatically impose a statutory lien on such property. However, N.C.Gen.Stat. § 105-366 authorizes the tax collector to attach or levy on property of a taxpayer prior to the determination of the amount owed if the tax collector has grounds to believe that the taxpayer is about to remove his property from the district, transfer it to another, or is in imminent danger of becoming insolvent. The lien on such property is created on and from the date of such attachment. N.C.Gen.Stat. § 105-366(b). However, taxes levied on personal property result in a lien which attaches to all real property of the debtor retroactive to the date on which the personal property was to be listed, i.e., January 1. N.C.Gen.Stat. § 105-355(a). Therefore, any real property of the debtor came into the estate already impressed with a lien for the taxes based on the January 1 assessment of the debtor's personal property.
 
 
 26
 The majority places great emphasis on the fact that, as of the filing date, the amount of tax based on the January 1 valuation was unknown. The critical issue, according to the majority, is "to determine when the tax actually is a claim which may be asserted against the taxpayer, in this case allegedly the debtor's estate." Slip op. at 6-7. As discussed above, however, an attachment against the taxpayer's propery may be asserted by the tax collector against the taxpayer in some situations prior to the determination of the amount due. Moreover, there is no question that the tax collector could have filed a claim against the debtor's estate prior to July 1, 1985. Although the precise amount of the claim would have been contingent on the enactment of the tax rate on July 1, 1985, the contingency would not have affected the tax claim's status as a "right to payment." 11 U.S.C § 101(4).
 
 
 27
 The majority's analysis of United States v. Friendship College, Inc., 737 F.2d 430 (4th Cir.1984), is unpersuasive. The taxes involved in Friendship College were income taxes withheld by the debtor-employer and the employer's FICA contributions. However, these taxes were based on wages owed to the employees for services rendered after the bankruptcy petition had been filed. Had these taxes been attributable to wages earned pre-petition, even if payable post-petition, they would not have been entitled to priority as an administrative expense. 3 Collier on Bankruptcy, p 503.04, 503-37 (15th ed. 1979); see also, In re Guld and Eberhardt Gear Machinery Corp., 69 B.R. 944, 946 (Bky.D.Mass.1987). The pivotal event, then, was the performance of services. In the case before us, the pivotal event was the January 1 valuation of the personal property.
 
 
 28
 The fate of property after the January 1 valuation date is of no consequence as far as tax liability is concerned. If, after January 1 but prior to July 1, the value of the property is decreased due to fire, flood, or othewise, or if it is increased due to escalating values, the January 1 valuation still controls. The mere fact that the matching of the tax rate to the budget needs occurs at a later date does not, in my view, require a finding that the tax is incurred or assessed at this later date. The critical event determining tax liability is the ownership of property in the taxing district on January 1. Accordingly, I would reverse the decision of the district court.
 
 
 
 [1]
 The only reference to property taxes in § 507(a)(7) is § 507(a)(7)(B) which encompasses "a property tax assessed before the commencement of the case and last payable one year before the date of filing the petition." (Emphasis added.) Since timing is also the determinative factor under § 507(a)(7)(B), this issue is disposed of by the court's decision of the administrative expense question
 
 
 [2]
 For example, in the euphoria of what formerly were seemingly unlimited revenues flowing from local taxation on oil and gas extraction, certain of the Louisiana parishes could well have concluded that local taxpayers should have no obligation for taxes for a given year. The parish governing bodies in that case could have set a zero tax rate for that particular year. Until that action was taken, it simply was not possible to know whether there was in fact a tax obligation for the particular year
 The same is true here; until the tax rate is set in July, it is impossible to know whether any obligation exists whatsoever. In the ordinary course of things, a taxpayer could, and very likely would, assume that the ownership of personalty as of January 1 would result in some taxation, indefinite in amount though it might be. The taxpayer's subjective and pessimistic view, however, is not enough to conclude as a matter of law that the tax is "incurred" as of January 1.
 
 
 [3]
 North Carolina Gen.Stat. § 105-366, in effect at the relevant time, stated in part:
 (c) Remedies Before Taxes Are Delinquent.--If between the date as of which property is to be listed and September 1 of the fiscal year for which the taxes are imposed the tax collector has reasonable grounds for believing that the taxpayer is about to remove his property from the taxing unit or transferit to another person or is in imminent danger of becoming insolvent, that tax collector may levy or attach that property or any other personal property of the taxpayer.... If the amount of taxes collected under this subsection has not yet been determined, these taxes shall be computed in accordance with G.S. 105-359 and any applicable discount shall be allowed.
 
 
 [4]
 See also N.C.Gen.Stat. § 105-355 which creates an automatic lien for taxes against real property, but specifically excludes personalty from the automatic provision
 
 
 [5]
 The appellant in this case raised the issue in his appellate brief of whether the taxes at issue were to be considered administrative expenses of the Chapter 11 estate, or the subsequent Chapter 7 estate; the district court did not distinguish between the two when it rendered its opinion because the question was not raised before him. A careful review of the record reveals that this issue was raised for the first time on appeal, without an opportunity for it to be addressed by the district court. The issue is therefore not properly before us, and we express no opinion on it