In the Matter of The **COLUMBIA GAS SYSTEM, INC., Columbia Gas Transmission Corporation, Debtors.**

**Bankruptcy Nos. 91–803, 91–804.**

United States Bankruptcy Court, D. Delaware.

Aug. 19, 1992.

James L. Patton, Jr., Robert S. Brady, Young, Conaway, Stargatt & Taylor, Wilmington, Del., Laurence Greenwald, Stroock & Stroock & Lavan, New York City, for debtors.

Robert Weinberger, West Virginia Dept. of Tax and Revenue, Charleston, W.Va., for State of W.Va.

Stuart D. Gibson, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

On February 14, 1992, the Columbia Gas Transmission Corporation (TCo), a debtor-in-possession in this court, filed a motion to pay various property tax liabilities in ten states. The Internal Revenue Service objected to the motion. Extensive discussions between TCo and the IRS resulted in consent orders allowing TCo to pay some of the requested property taxes. TCo voluntarily dismissed its motion with respect to other of the property taxes.

Presently still in dispute are certain property tax liabilities in West Virginia. As to these taxes, the IRS disagrees with the position of TCo and West Virginia that the taxes are entitled to priority as an administrative expense. The parties do agree that whether TCo should be able to pay the West Virginia taxes depends solely on the administrative priority issue. TCo requests expedited consideration of this matter, so as to avoid the possible unnecessary payment of interest, as well as the loss of a pre-payment discount. W.Va.Code § 11-6-18 (1986). This is the court's opinion on this core matter. 28 U.S.C. § 157(b)(2)(A), (B) & (O).

### I. *Facts*

A stipulation the parties filed discloses the following facts. The tax at issue is a personal property tax assessed against TCo as a public service business pursuant to W.Va Code §§ 11-6-1 *et. seq.* On or before May 1, 1991, TCo filed a tax return with the West Virginia Board of Public Works. TCo filed its Chapter 11 petition in this court on July 31, 1991. On October 31, the Board issued a final assessment of the public utility tax. At issue are $6,700,-429.33 in unpaid public utility taxes. Stipulation of Facts, Case No. 91-803, Docket No. 1563, ¶¶ 3, 8, 11.

### II. *Discussion*

#### A. The issue

Section § 503(b)(1)(B) of title 11 states: After notice and a hearing, there shall be allowed administrative expenses, ..., including—

\* \* \* \* \* \*

(1)(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title.

The parties agree the sole and dispositive legal issue is whether the public utility tax here:

[I]s a tax "incurred by the estate," within the meaning of 11 U.S.C. § 503(b)(1)(B), and is therefore entitled to priority as an administrative expense.

Stipulation, § 13. TCo's bankruptcy estate came into existence upon the filing of its Chapter 11 petition. TCo asserts the public utility tax was "incurred" post-petition and therefore was incurred "by the estate." The IRS counters that the public utility tax was incurred pre-petition.

## B. The parties' arguments

 The term "incurred" is not defined by the Bankruptcy Code, and has not been analyzed by any cases within the Third Circuit.[1] The litigants have cited many decisions from courts in other Circuits analyzing whether a state tax was "incurred by the estate." These courts have adopted primarily two different methodologies of determining when a tax obligation is incurred. The litigants characterize these methodologies as the date of accrual rule, and the date of assessment rule. The date of accrual rule (favored by the IRS) holds that the tax obligation is incurred when the tax accrues, or when an incident of taxation arises. The date of assessment rule (favored by TCo) holds that the tax is not incurred until the taxing authority actually assesses the amount of the tax.

The litigants argue this court should adopt one or the other of these respective rules and apply it here. The premise of their arguments is that one rule is appropriate regardless of state law. This premise violates the teachings of *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) and is incorrect. When a tax obligation arises is a question of state law, and is not governed by the analysis of a different state's tax law. Instead of adopting one of the two methodologies, this court needs to determine the Bankruptcy Code meaning of "incurred" and apply it to the state law at issue here.

## C. The Bankruptcy meaning of "incurred"

 "Incur" is defined as "become liable or subject to." Websters 3rd New International Dictionary 1146 (16th ed. 1971). The relevant legislative history of section 503(b) states:

In general, administrative expenses include taxes which the trustee incurs in administering the debtor's estate, including taxes on capital gains from sales of property *by* the trustee and taxes on income earned *by* the estate during the case.

S.Rep. No. 989, 95th Cong., 2d Sess. 66 (1978) (emphasis added). The court concludes the legal issue before it should be slightly rephrased in more commonly used terms—whether TCo's legal obligation, or liability on a claim, to pay the tax first arose before or after the filing date. *See* 11 U.S.C. § 101(12).

The Third Circuit has already explained how to determine when liability on a claim first arises. In *In re Remington Rand Corp.*, 836 F.2d 825 (3d Cir.1988), at issue was when the United States first possessed a claim arising under the Contract Dispute Act of 1978. There, the government had not, prior to confirmation of the debtor's plan, completed a certification procedure that was a prerequisite to the government's ability to sue the debtor under the Contract Act. The government argued its claim arose post-confirmation and was thus not discharged.

In considering this argument, the *Remington* court started with the Bankruptcy Code definition of a claim:

[A] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed....

*Id.* at 829 (quoting 11 U.S.C. § 101(4)(A)). The *Remington* court then examined the language of the Contract Act. It found that the Act first required the governmental contract officer to find that the government indeed had a valid claim, and that this

---

**1.** TCo's suggestion in its brief that *Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp.*, 884 F.2d 80 (3d Cir.1989) addresses the 503(b) issue and supports its motion is without merit.

administrative requirement was a jurisdictional prerequisite to judicial resolution of the claim. 836 F.2d at 830. However, the court found nothing in the Act intending to exclude a claim arising under it from the Bankruptcy Code's broad definition of a claim. The *Remington* court recognized the legal principle that "a party may have a bankruptcy claim and not possess a cause of action on that claim." *Id.* at 831–32. The court concluded that the government's claim arose when it knew of the alleged breach—this is when the right to payment arose, even though the claim would at that time be merely contingent and not fixed, and even though under the Contract Act no judicial jurisdiction yet existed. *Id.* at 831–33.[2]

TCo and West Virginia rely heavily on the unreported decision of *Forsyth County v. Burns*, 891 F.2d 286, 21 Collier Bankr. Cas.2d (MB) 1337, (1989), *reh'g denied en banc*. That court held that North Carolina property taxes are not incurred until either the tax rate is set or the tax is due, because until then, no right to payment exists. This reasoning conflicts with that of *Remington* and must therefore be rejected.

This court will utilize the *Remington* court's analysis of a "claim" under the Bankruptcy Code as applied to the body of law that creates the claim at issue here—West Virginia tax law. Specifically, the question is only whether, under West Virginia law, West Virginia's right to payment for the public utility tax arose pre-petition or post-petition.

D. West Virginia Public Utility Tax Law

◼ The public utility tax is an *ad valorem* tax which is "based upon the value of the property, tangible or intangible." *City of Fairmont v. Pitrolo Pontiac–Cadillac Co.*, 172 W.Va. 505, 308 S.E.2d .527, 530 (1983). West Virginia law establishes the following chronological procedure for reporting and payment of public utility taxes.

TCo must file a tax return by the first of May each year. W.Va.Code § 11–6–1(a)(5) (1986). The return contains detailed information describing the quantity and value of TCo's pipelines and related realty within West Virginia that enables the Board to determine the value of TCo's property. § 11–6–5; § 11–6–1(e). As to the year upon which the return is based, "the return ... [of TCo] shall cover the year ending on the thirty-first day of December, next preceding...." § 11–6–1(e). While the phrase "next preceding" is hardly unambiguous, the parties do not dispute that here it refers to the prior year. If TCo fails to file a return, the West Virginia Code provides remedies for compelling compliance with § 11–6–1, as well as for criminal sanctions that can be imposed upon TCo. § 11–6–8; § 11–6–9. The tax commissioner examines the return, and notifies the Board and TCo of his tentative assessment by the fifteenth of September. § 11–6–9(e).

Next, not later than the first of October of the year in which the return is filed, the Board "shall proceed to assess and fix the true and actual value of all property of [TCo.]" § 11–6–11. If this assessment and valuation is not appealed, it is "final and conclusive." *Id.* Finally, the state auditor then serves TCo with a statement of all taxes assessed, and:

> [I]t shall be the duty of [TCo], to pay one half of the amount of such taxes ... into the treasury of the State by the first day of September and the remaining one half by the first day of the following March....

§ 11–6–18.

E. The Public Utility Taxes Were Not Incurred by the Estate.

As contemplated by these statutes, TCo filed its return as required by May 1, 1991. A tentative assessment was issued by September 15, 1991. On October 31, 1991, the

---

2. The IRS has cited several cases that utilize a similar analysis. *E.g., In re O.P.M. Leasing Services, Inc.*, 68 B.R. 979, 983–85 (Bankr.S.D.N.Y. 1987); *In re Ames Dept. Stores*, 136 B.R. 353, 356 (Bankr.S.D.N.Y.1992). Even the primary case TCo and West Virginia rely upon agrees with this approach. *Forsyth County v. Burns*, 891 F.2d 286, 21 Collier Bankr.Cas.2d (MB) 1337, 1139 n. 2 (1989), *reh'g denied en banc*.

Board determined and notified TCo of the final assessment of the public utility tax. Thus the public utility taxes at issue here were finally determined on approximately October 31, and one-half become due on September 1, 1992.

Upon consideration of this statutory scheme as a whole, the court concludes TCo's obligation to pay the taxes arose when it owned and operated property within the prior calendar year (1990). Nothing in the statute suggests that West Virginia's right to payment is dependent upon the assessment procedure that commences following the filing of its return. The assessment procedure is an administrative procedure for fixing the amount of the tax owed, *Western Md. Ry. v. Board of Pub. Works*, 141 W.Va. 413, 90 S.E.2d 438, 445 (1955), and the tax is not "due" until the completion of this process. § 11–6–18. However, as discussed in *Remington*, this is not required for an unmatured, contingent claim for taxes to exist.

### III. *Conclusion*

The public utility taxes at issue here were incurred by TCo prior to the filing of its petition.