### In re R.H. MACY & CO. INC. et al., Debtors.

### No. 93 Civ. 1294 (LMM).

United States District Court, S.D. New York.

Aug. 19, 1993.

O. Peter Sherwood, Corp. Counsel of the City of New York, New York City (Karel S. Karpe, of counsel), for appellant City of New York, Dept. of Finance.

Richard P. Krasnow, Adam C. Rogoff, Weil, Gotshal & Manges, New York City, for appellee R.H. Macy's & Co., Inc.

## OPINION AND ORDER

McKENNA, District Judge.

### 1.

The City of New York, Department of Finance (the "City"), appeals, pursuant to 28 U.S.C. § 158(a), from an order dated January 15, 1993 (the "Order") of the United States Bankruptcy Court for the Southern District of New York (Lifland, C.J.) (the "Bankruptcy Court"). The Order denied a motion by the City for an order compelling R.H. Macy & Co., Inc., *et al.* (the "Debtors") to pay real property taxes and related charges as an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(B)(i). The Bankruptcy Court's decision (Tr., Jan. 4, 1993, at 18–24) upon which the Order is based turns, principally, on the application to the facts of this case of *In re Parr Meadows Racing Ass'n,* 880 F.2d 1540 (2d Cir.1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990).

For the reasons set forth below, the Order is reversed, and the case remanded for consideration of issues not determined by the Bankruptcy Court.

### 2.

At issue are unpaid real property taxes for the July 1, 1992—June 30, 1993 tax year on seven properties in New York City owned by the Debtors,[1] in the amount, according to the City, of $17,799,569.03.[2]

In New York City, "[t]he taxable status of all real property assessable for taxation in the city shall be fixed for the succeeding fiscal year on the fifth day of January in each year." N.Y.C. Charter, § 1519. The City's fiscal year runs from July 1 through June 30. The tax status date for the taxes at issue was, therefore, January 5, 1992. No taxes are due or payable on the tax status date. Rather, as the Debtors concede, "[u]nder applicable nonbankruptcy law, the [taxes at issue] for the period July 1, 1992 through December 31, 1992, were due and payable on July 1, 1992, and [those] for the period January 1, 1993 through June 30, 1993, were due and payable on January 1, 1993." Brief of R.H. Macy & Co. Inc. at 6. On January 27 and 31, 1992—between the January 5, 1992 tax status date and July 1, 1992, when taxes at issue first became due—the Debtors filed petitions under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses as debtors in possession. Their cases have been consolidated for procedural purposes only, and are being jointly administered.

The Bankruptcy Court—after noting that statutory priorities are to be narrowly construed (Tr., Jan. 4, 1993, at 19 (citing *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 100 (2d Cir.1986))) and that it is the City's burden to demonstrate that its claim was incurred postpetition (Tr., Jan. 4, 1993, at 19 (citing *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976))), and after pointing out the breadth of the Bankruptcy Code's definition of "claim" in 11 U.S.C. § 101(5)(A) (Tr.,

---

1. There appears to be some question as to the ownership, or at least the full ownership, by the Debtors of one of the properties. *See* Brief of R.H. Macy & Co., Inc. at 5 & n. 8.

2. Some water, sewer and elevator inspection charges are included. The Debtors state that they are not waiving the right to dispute the validity and amount of the tax claim. *Id.* at n. 9.

Jan. 4, 1993, at 20–21 (citing *Johnson v. Home State Bank,* — U.S. —, —, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991)))—found that the City's claim arose prepetition:

> Upon examination of the material, undisputed facts surrounding this dispute, this Court finds that the City's claim arose prior to the petition date when the City first held an interest in the Debtors' real property. In re Summit Ventures, 135 B.R. at 492. As the 2d Circuit has held, that a taxing authority's interest in real property arises as of the tax status date, In re Parr Meadows, 880 F.2d at 1546–47, this Court finds that the City's claim, although unmatured, arose as of January 5, 1992, the City's tax status date.

> In fact, the City's own reply papers reveal that the tax status date establishes a contingent, unmatured claim which becomes due on July 1, 1992 and January 1, 1993, respectively, when the taxes were deemed due and payable. See the Reply of the City of New York at Page 7.

> Therefore, as the City's claim for real property taxes for the 1992 fiscal year arose during the prepetition period, such taxes are not entitled to administrative expense status pursuant to Section 503(b)(1)(B).

(Tr., Jan 3, 1993, at 22–23.)

Clearly, the principal issue on the present appeal is whether *Parr Meadows* leads to the result reached by the Bankruptcy Court.

### 3.

*Parr Meadows* was concerned with a dispute between secured creditors (mortgagees of real property that had been owned by the debtor), on the one hand, and the County of Suffolk (which asserted real property tax liens), on the other, over distribution of a *res* of an amount insufficient to satisfy the mortgage liens and the tax liens.

On June 12, 1979, Ronald J. Parr, the chairman of Parr Meadows Racing Association (the "Association") filed for bankruptcy; on October 4, 1979, the Association petitioned for reorganization under Chapter 11. The Association's reorganization was converted to a Chapter 7 case. 880 F.2d at 1543. The principal asset of the two debtors was real property (the "racetrack") located in Suffolk County, on which the mortgagees held valid mortgages perfected before the debtors' bankruptcy filings. *Id.* There was a dispute between Parr's and the Association's respective trustees as to ownership of the racetrack. *Id.* Then

> [l]eaving to another day their differences as to who owned the racetrack, trustees for both Parr and the association agreed that the property should be sold. They therefore made application to, and received permission from, the bankruptcy court to sell the property to Suffolk Meadows Corporation, free and clear of all previous mortgages and liens, for a purchase price of $750,000 in cash, plus a note and mortgage on the property for $10,750,000. Thereafter, also with the bankruptcy court's approval, the note and mortgage were discounted and sold by the trustees for a cash sum of $7,500,000; all earlier mortgages and liens that previously encumbered the racetrack property, were transferred to the proceeds of this sale. Claims of the secured creditors exceeded the total proceeds of the sale.

*Id.*

A dispute ensued between the mortgagees and the County as to how the proceeds of the sale should be distributed. The County asserted that its claims for back real property taxes had priority, relying on "the annual tax liens which, absent bankruptcy, attached to the racetrack every December 1." *Id.* In Suffolk County, the tax status date is June 1, and real property taxes become due and payable on December 1. *Id.* at 1542 (citing Suffolk County Tax Act, §§ 5 and 13). As noted, the debtors' bankruptcy filings occurred on June 12 and October 4, 1979. *Id.* at 1543. The sequence of dates in *Parr Meadows* is thus (as to the County's 1979–1980 tax year) parallel to that in the present case: in *Parr Meadows*, the tax status date was June 1, 1979; real property taxes first became due

and payable on December 1, 1979; and the bankruptcy filings occurred between June 1 and December 1, 1979.

The Court of Appeals was required to consider whether Suffolk County had valid tax liens on the *res* for real property taxes for the 1979–1980 tax year. The mortgagees took the position that the County could not have such liens, since the perfection of such liens on December 1, 1979—the date on which the taxes became due and payable—would violate the automatic stay provisions of the Bankruptcy Code. After finding that the automatic stay provided in 11 U.S.C. § 362(a) did apply, 880 F.2d at 1544–46, the Court of Appeals then considered the exception to the automatic stay found in 11 U.S.C. §§ 362(b)(3) and 546(b):

> Section 362(b)(3), which creates one of several statutory exceptions to the automatic stay, provides that the filing of a petition does not operate as a stay of "any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to perfection under section 546(b)". Section 546(b), in turn, exempts from the trustee's power of avoidance "any generally applicable law that permits the perfection of an *interest in property* to be effective against an entity that acquires rights in such property before the date of such perfection."

*Id.* at 1546 (emphasis added by Court of Appeals). The Court of Appeals then formulated the issue as follows: "the only real question as to whether the exception under § 546(b) applies is whether the county had an 'interest in [the] property' before December 1, and if so, when that interest arose." *Id.* The Court held that:

> [T]he county obtains an "interest in [the] property" sufficient to fall under § 546(b) on June 1, the tax status date. All assessment of property occurs as of that date, and from that time forward, the county has a real and identifiable interest in the property which cannot be erased or altered by subsequent events.

*Id.* at 1548 (citations omitted). It should be noted that the Court did *not* hold that the County's lien was perfected, or attached, on the tax status date. Under the language of 11 U.S.C. § 546(b), that is not the issue. The issue, rather, is when the County had an "interest in [the] property." It is that "interest" that was acquired prepetition, on the tax status date. "[W]e hold that the county obtains an 'interest in [the] property' sufficient to fall under § 546(b) on June 1, the tax status date." *Id.*

It is also important to note, in connection with the present case, that the Court of Appeals, in *Parr Meadows*, did not address the question when real property taxes were "incurred by the estate" within the meaning of 11 U.S.C. § 503(b)(1)(B)(i). The Court of Appeals was not concerned with the obligation of the debtors to pay real property taxes for the 1979–1980 tax year, or when that obligation (if any) arose, or what priority such an obligation would be entitled to. No question regarding any personal obligation to pay real property taxes was before the Court; the Court, in fact, noted that "[r]ightful ownership of the [property] is still the subject of some dispute, but that issue is not before us on appeal." *Parr Meadows*, 880 F.2d at 1543. The Court of Appeals was concerned, rather, with the existence and application of a lien *in rem*.

4.

What the Bankruptcy Court did in the present case may be summarized as follows. *Parr Meadows* clearly requires a finding in the present case that the City acquired an "interest" (as that term is used in 11 U.S.C. § 546(b)) in the property on the prepetition tax status date, and that the acquisition of such interest prepetition allowed the postpetition perfection of the City's lien on the *res*. The Bankruptcy Court then concluded that the City's claim against Debtors for taxes also "arose" on the prepetition tax status date as a "contingent, unmatured claim." (*See* Tr., Jan. 3, 1993, at 22–23.) For several reasons, this Court does not believe that the conclusion drawn by the Bankruptcy Court follows from *Parr Meadows*. For one thing, that conclusion does not take into account the distinction between claims *in rem* and claims *in personam*. For another, it does

not adequately recognize the difference between the language of 11 U.S.C. § 546(b) ("acquires rights in such property"), at issue in *Parr Meadows,* and that of 11 U.S.C. § 503(b)(1)(B)(i) ("tax ... incurred by the estate"), at issue here.

5.

In New York City, there is—in addition to a lien on property subject to real property taxes—a personal obligation on the part of owners of real property to pay real property taxes. State law provides, in relevant part, that:

> The owner of real property, or of an interest therein, ... if a resident of the city or town in which such property or interest therein is assessed and if his name is correctly entered on the roll, shall be personally liable for the taxes levied thereon. The term "resident" shall include a corporation having within such city or town a place for the regular transaction of business or in actual possession of real property therein.

New York Real Property Tax Law § 926(1) (McKinney 1989). The taxing authority may, after demand, levy on personal property of "any person personally liable for unpaid taxes listed on the roll." *Id.* § 926(2). The New York City Administrative Code, in the chapter dealing with the foreclosure of tax liens, provides, in relevant part, that "the remedy provided herein for foreclosure by action *in rem* shall be in addition to any other remedies or procedures provided by any general, special or local law," N.Y.C.Admin.Code § 11–402(b), thus preserving the right to proceed personally against the owner of real property as well as *in rem* against the property. Whether the right thus preserved would survive foreclosure of a tax lien, *cf. City of Buffalo v. Cargill, Inc.,* 44 N.Y.2d 7, 403 N.Y.S.2d 473, 374 N.E.2d 372 (1978), is not presently at issue.

The distinction between a right *in rem* against real property, on the one hand, and a right against the owner of that property, personally, on the other, appears to this Court to be a very real one. It has, moreover, been recognized by the Supreme Court in the bankruptcy context, albeit a different context than that presented here. *See Johnson v. Home State Bank,* —— U.S. at —— – ——, 111 S.Ct. at 2153–55 (mortgage lien securing obligation for which debtor's personal liability discharged in Chapter 7 liquidation remains "claim" subject to inclusion in Chapter 13 plan).

Since no issue of the personal liability of a debtor was before the Court of Appeals in *Parr Meadows*—that case dealt, rather, as has been seen, with the question whether the County of Suffolk had acquired an interest in property prepetition in connection with the issue whether the County had an *in rem* lien—the holding of *Parr Meadows* does not require affirmance of the Bankruptcy Court.[3] The question in the present case, then, is whether *Parr Meadows* should be extended to apply to the different facts presented here.

6.

■ There does not appear to be any general policy reflected in the Bankruptcy Code requiring the application here of *Parr Meadows* so as to allow Debtors to avoid payment in full of real property taxes covering a period during which they were conducting business as debtors in possession.[4] Indeed, the general reasoning underlying the treatment of debtors in possession in bankruptcy law appears to indicate that *Parr Meadows* should not be applied, by extension, to the present case.

> Since the debtor-in-possession is a separate legal entity that is carrying on the business principally for the benefit of the pre-filing creditors, the [Supreme] Court has reasoned that fairness requires that any claims incident to the debtor-in-possession's operation of the business be

---

**3.** Nor does *Parr Meadows* contain *dictum* concerning personal, as opposed to *in rem,* liability for real estate taxes.

**4.** In *Parr Meadows,* the result of the Court of Appeals' decision was to permit Suffolk County

to satisfy, at least in part, its tax claim against the *res.* One might find it ironic if *Parr Meadows,* applied here, operated to the detriment of the taxing authority, contrary to the result in *Parr Meadows.*

paid before those of creditors for whose benefit the continued operation of the business was allowed.

*Mammoth Mart,* 536 F.2d at 954 (citing *Reading Co. v. Brown,* 391 U.S. 471, 478, 88 S.Ct. 1759, 1763, 20 L.Ed.2d 751 (1968)). In normal contemplation, "claims incident to the debtor-in-possession's operation of the business" would surely include payment of real property taxes on the property on which the business is conducted for a period during which the business is conducted. It is difficult to imagine a businessperson who would not regard such taxes as "incident" to the carrying on of his or her business.[5]

Nor does the language of relevant provisions of the Bankruptcy Code indicate that *Parr Meadows* should be applied to the facts of the present case.

■ 11 U.S.C. § 503 (the provision upon which the City principally relied in the Bankruptcy Court) provides, in relevant part, that "[a]fter notice and a hearing, there shall be allowed administrative expenses, ... including— ... any tax—incurred by the estate, except a tax of a kind specified in section 507(a)(7)."[6] 11 U.S.C. § 503(b)(1)(B)(i). While the City, under *Parr Meadows,* acquired an "interest" in the real property in question on the tax status date, January 5, 1992, it is hard to see how the tax itself can be said to have been "incurred" before July 1, 1992, the beginning of the tax year, before which date the Debtors were under no obligation to pay real property taxes. To "incur" means to "become liable or subject to." *Webster's Third New International Dictionary* (1986), at 1146 (second definition);

see also, *Black's Law Dictionary* (5th ed. 1979), at 691. Plainly, Debtors were not "liable or subject to" the real property taxes at issue prior to the bankruptcy filing dates.[7]

■ Nor, in this Court's view, does the admittedly broad scope of the Bankruptcy Code's definition of "claim"[8] require the application of *Parr Meadows* to the facts of this case. However broad the modifying phrases in the definition may be, a "claim" must be a "right to payment." *Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990). And "[t]he plain meaning of a 'right to payment' is nothing more nor less than an *enforceable obligation,* regardless of the objectives the State seeks to serve in imposing the obligation." *Id.* at 559, 110 S.Ct. at 2131 (emphasis added). *See also, Johnson v. Home State Bank,* — U.S. at —, 111 S.Ct. at 2154.

This Court cannot agree with the Bankruptcy Court that "the tax status date establishes a contingent, unmatured claim which becomes due on July 1, 1992 and January 1, 1993, respectively, when the taxes were deemed due and payable." (Tr., Jan. 4, 1993, at 23.) It is clear—indeed, it is not disputed—that on the tax status date (January 5, 1992) no "enforceable obligation" on the part of the Debtors to pay the real property taxes at issue came into existence: the Debtors were under no obligation to pay the real property taxes at issue on January 5, 1992, or any date before July 1, 1992. The question, rather, is whether, on the tax status date, the Debtors were under an "enforceable obligation" to pay the taxes even though that obli-

---

**5.** In *Reading Co. v. Brown,* the Supreme Court noted that "state and federal taxes accruing during a receivership have been held to be actual and necessary costs of an arrangement." 391 U.S. at 484, 88 S.Ct. at 1766 (footnote omitted).

**6.** As to the exception for taxes of the kind specified in 11 U.S.C. § 507(a)(7) (which the Bankruptcy Court did not reach), *see* Sec. 8 of this Memorandum and Order, below. For the purposes of this Section of this Memorandum and Order, the Court assumes, *arguendo,* that the exception does not apply.

**7.** Whether 28 U.S.C. §§ 959 and 960, also cited by the City, have any real bearing on the present case is not clear. The Court notes that § 960 speaks of "taxes applicable to [a] business," which may not apply to real property taxes, which are payable without regard to the use to which the property is put.

**8.** A "claim" is defined in 11 U.S.C. § 101(5)(A) as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

gation (or its enforcement) was "contingent" on something else later happening; or, differently put, whether the Debtors were under an "unmatured" obligation to pay taxes on January 5, 1992, which obligation later "matured" and became "enforceable."

At this juncture, however, the distinction between rights *in rem* and rights *in personam* must be borne in mind. As *Parr Meadows* teaches, on the tax status date a taxing authority acquires an interest in real property leading to *in rem* rights against the property for taxes becoming due in the ensuing tax year, so that an *in rem* right can be said to mature on the tax due date. But nothing in *Parr Meadows* suggests that *in personam* rights against the taxpayer—as opposed to *in rem* rights against the property—are in any way acquired, or arise, on the tax status date. If the Debtors had sold the real property in question between the tax status date and the bankruptcy filings, there is no question but that the City would have retained a lien on the property notwithstanding the change in ownership; but there is equally no question but that the City would not have had even an arguable claim against the Debtors personally for payment of real property taxes due for a period subsequent to their ownership. It might be argued that an "enforceable obligation" to pay real property taxes for the ensuing tax year arises on the tax status date "contingent" upon the owner of the real property still being the owner at the time the taxes actually become due. But such an argument—apart from the facts that it is not suggested in *Parr Meadows* and is without foundation in New York law—appears to stretch the concept of contingency too far in the present context. In *In re Chateaugay Corp.*, 112 B.R. 513 (S.D.N.Y.1990) (Sprizzo, J.), *aff'd*, 944 F.2d 997 (2d Cir.1991), it was pointed out that "[a] claim, even a contingent claim, arises under the Bankruptcy Code at 'the time when the acts giving rise to the alleged liability were performed.'" *Id.* at 520 (other citations omitted) (quoting *In re Chateaugay Corp.*, 87 B.R. 779, 796 (S.D.N.Y. 1988) (quoting *In re Johns–Manville Corp.*, 57 B.R. 680, 690 (Bankr.S.D.N.Y.

1986)), *aff'd on other grounds sub nom. Pension Benefit Guaranty Corp. v. LTV Corp.*, 875 F.2d 1008 (2d Cir.1989), *rev'd on other grounds*, 496 U.S. 633, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990)). In the present case, it is ownership of the real property subject to taxation during the period with respect to which taxes are imposed that gives rise to the personal obligation to pay the tax, and that situation cannot arise until the tax due date.

The Court does not see any inconsistency between *Parr Meadows* and the conclusion that the City may be entitled to collect from Debtors, as an administrative expense, real property taxes for a postpetition period during which Debtors conducted business on the very property with respect to which the taxes are imposed. Under *Parr Meadows*, the City presumably has a lien on the real property for the taxes at issue; there is no inconsistency in concluding that it also may have a claim against Debtors personally for payment, as an administrative expense, of the same taxes. Nor can the Court find any reason in the Bankruptcy Code or the policies underlying it why the acquisition by the City of an interest in the property on the tax status date should eradicate Debtors' personal obligation incurred on the tax due date to pay the taxes.

7.

For the foregoing reasons, the Court finds that *Parr Meadows* does not support denial of the City's motion to compel Debtors to pay real property taxes for the July 1, 1992—June 30, 1993 tax year as an administrative expense.

8.

As noted above, however, 11 U.S.C. § 503(b)(1)(B)(i) contains an exception for "a tax of a kind specified in section 507(a)(7)." The Bankruptcy Court did not reach the question of the effect of 11 U.S.C. § 507(a)(7) in this case. (Tr., Jan. 3, 1993, at 23.) As also noted above, there may be an issue as to the ownership of one of the properties in question. Further, as also noted above, Debtors have—or at least claim to have—reserved the right to chal-

lenge the validity and amount of the City's tax claim.[9]

The present decision, therefore, is limited to what is said in Section 7 above. The Order is reversed and the case is remanded to the Bankruptcy Court for consideration of all other relevant issues.

SO ORDERED.

---

**9.** In light of the last two issues mentioned, it might be urged that the Order is not final. *See* 28 U.S.C. § 158(a). Neither side, however, has raised the question. To the extent that the Order may be interlocutory, the Court grants leave to appeal. *Id.*