OPINION OF THE COURT
PARELL, District Judge.
I.
This appeal originates from an order of the bankruptcy court that denied the motion of Chapter 11 debtor Columbia Gas Transmission Corporation (“Columbia Gas”) for authorization to pay as administrative expenses certain personal property taxes assessed by the State of West Virginia; The district court affirmed that order. We must decide whether certain West Virginia personal property tax liabilities that were based on the ownership of property at a time before the filing of a bankruptcy petition, and were assessed after the filing of the petition, are entitled to priority under the Bankruptcy Code as administrative expenses.
II.
As required under West Virginia law, Columbia Gas filed, on or before May 1,1991, a tax return with the West Virginia Board of Public Works (“BPW”) and reported its property and value of its property within the State of West Virginia as of December 31, 1990. On July 31,1991, Columbia Gas filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. On September 15, 1991, BPW issued Columbia Gas a tentative assessment of its property for purposes of a public service business tax (hereinafter referred to as the “property taxes”), and BPW issued a final assessment on October 15, 1991.
Columbia Gas filed a motion in the bankruptcy court on February 14, 1992 for an order authorizing payment, inter alio, of the property taxes as post-petition priority administrative expenses under the Bankruptcy Code, 11 U.S.C. § 503(b)(1)(B). The Internal Revenue Service, which had filed a claim in the proceeding, objected to the motion. The bankruptcy court denied the motion finding that the obligation of Columbia Gas to pay the taxes arose when it owned and operated property in 1990, prior to the filing of its petition. In re Columbia Gas System, Inc., 146 B.R. 114 (Bankr.D.Del.1992). The district court similarly found that Columbia Gas, and not the bankruptcy estate, incurred the property taxes as a result of owning the property during 1990. The district court accordingly affirmed the order of the bankruptcy court.
On appeal, Columbia Gas and the West Virginia Department of Tax and Revenue contend that the district court and bankruptcy court erred in concluding that Columbia Gas incurred the property taxes pre-petition. They submit that the property taxes were incurred post-petition by the bankruptcy estate because the bankruptcy petition was filed on July 31, 1991 and the tentative assessment was made on September 15, 1991. Appellee, the Internal Revenue Service, argues that the property taxes were incurred pre-petition based on Columbia Gas’s ownership of property in West Virginia before December 31, 1990, the date as of which Columbia Gas’s property was valued by the West Virginia tax authorities.
III.
We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 158(d). This case was decided on stipulated facts. We apply like the district court a plenary standard to legal issues. See, e.g., Meridian *984 Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir.1992).
IV.
The Bankruptcy Code establishes a priority scale by which payments from the bankruptcy estate are made. 11 U.S.C. § 507. Section 507(a)(1) gives first priority to administrative expenses allowable under section 503(b). Section 503(b)(1)(B)® of the Bankruptcy Code provides:
(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
(1)(B) any tax—
(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title.... [1]
11 U.S.C. § 503. The priority for taxes “incurred by the estate” extends only to taxes “incurred” postpetition. See, e.g., 11 U.S.C. § 541(a); United States v. Friendship College, Inc., 737 F.2d 430, 432 (4th Cir.1984).
Whether or not Columbia Gas is entitled to administrative expense priority for the property taxes depends on which date it “incurred” the property taxes under section 503(b)(1)(B). See 3 Collier on Bankruptcy, ¶ 503.04, at 503-34 (15th ed. 1994) (“Whether a tax has been ‘incurred by the estate’ is not always easy to determine. The time of assessment or payment may not be equivalent to the time the tax is incurred for the purpose of establishing priority under section 503(b)(1)(B). Rather, the significant fact may be the date the tax accrues.”) If the property taxes were “incurred by the estate” of Columbia Gas on September 15, 1991, the date of the tentative assessment, the property taxes must be given priority as an administrative expense under section 503. If, however, before Columbia Gas filed its bankruptcy petition the property taxes were incurred in 1990, the period covered by its May 1, 1991 tax return, the property taxes would not be entitled to administrative priority under section 503(b)(1)(B).
The Bankruptcy Code does not precisely define when a property tax obligation is “incurred.”[2] The determination of when a state tax is incurred is governed by state law. See generally Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); Arkansas Corp. Comm’n v. Thompson, 313 U.S. 132, 142, 61 S.Ct. 888, 891, 85 L.Ed. 1244 (1941). The personal property tax obligation in this matter is governed by West Virginia law.
The West Virginia tax assessed against Columbia Gas is a tax assessed by that State against public service businesses. A public service business must file a return with the BPW on May 1 in each assessment year based on the value of property held within West Virginia as of the year ending on December 31 of the year next preceding. See W.Va.Code § ll-6-l(a) and (e). Under West Virginia law, by filing this return, ownership of the property is fixed, so that the owner of the property on that date will be charged with the taxes to be assessed thereon, even though the assessment occurs at a *985 later date. See 1981 Op. Atty Gen. W.Va. 94, 1991 WL 157185, 1981 W.Va. AG LEXIS 23 at * 19-28 (March 23,1981) (transferor liable for public utility taxes on property owned by transferor on December 31, 1975 which were assessed in 1976 notwithstanding transfer of subject property prior to assessment); see also Cole v. State, 80 S.E. 487, 491, 73 W.Va. 410, 419 (W.Va.1913) (real property devoted to religious purposes found tax exempt because “the policy of our law ... is to have a fixed and definite date by reference to which all property shall be assessed for taxation, and he is the owner for the purpose of taxation who on that day, by himself or his tennant, has the freehold in possession.”); accord, Moore v. Johnson Service Co., 219 S.E.2d 315, 319, 158 W.Va. 808, 813 (W.Va.1975) (“in this State, all non-utility property is ‘assessed’ as of one particular day, ... even though the actual mechanics of the assessment procedure are likely to occur subsequent to that date.”); George F. Hazelwood Co., v. Pitsenbarger, 141 S.E.2d 314, 318, 149 W.Va. 485, 490 (W.Va.1965), appeal dismissed, 382 U.S. 201, 86 S.Ct. 392, 15 L.Ed.2d 268 (1965) (personal property that is located within West Virginia may “be assessed on any day fixed by the Legislature and the tax is determined thereby, even though the property is removed from the state before the tax is due or even before the assessor actually entered his figures.”)
The BPW issues such a tentative assessment on or before September 15, and final a assessment not later than October 1. Id. §§ 11-6-9, 11-6-10, and 11-6-11. After such assessment is completed, one-half the taxes are due in the following September, and one-half are due in the following March. Id. § 11-6-18. A lien on the property of a public service business attaches on December 31 of the assessment year. Id. § 11-6-23.
Here, as required under West Virginia law, Columbia Gas filed, on or before May 1,1991, a tax return covering the year ended December 31, 1990. Columbia Gas subsequently filed a bankruptcy petition on July 31, 1991. The public service business property tax was thereafter tentatively assessed against Columbia Gas in September 1991, and finally assessed against Columbia Gas in October 1991, based on the value of property held by Columbia Gas within West Virginia as of December 31, 1990. A hen arose as of December 31, 1991. Half of the property taxes at issue was due in September 1992, and the other half was due in March 1993.
Several cases have held that property taxes are incurred upon assessment. See, e.g., Forsyth County v. Burns, 21 C.B.C.2d. 1337, 1989 WL 141653 (4th Cir.1989); In re Pioneer Title Building, Ltd., 133 B.R. 822 (Bankr.W.D.Tex.1991) (ad valorem property taxes assessed postpetition entitled to administrative expenses); In re Fairchild Aircraft Corp., 124 B.R. 488 (Bankr.W.D.Tex.1991) (“Taxes assessed post-petition are therefore obligations of the estate falling under the express provisions of Section 503(b)(1)(B)”); cf. In re R.H. Macy & Co., 157 B.R. 548 (S.D.N.Y.1993) (personal real estate tax liability was not “incurred” prepetition on the tax status date, but rather was incurred post-petition on the tax due date). On the other hand, where, unlike in this matter, a hen attaches under state law to the taxed property before the bankruptcy petition is filed, courts have held that a post-petition assessment or setting of the relevant tax rate does not make the taxes administrative expenses incurred by the estate. See In re Point Restaurant and Oyster Bar, 86 B.R. 252 (Bankr.N.D.Fla.1988), (Florida statutory scheme imposed hen on taxable personal property as of prepetition date of its valuation despite fact that determination of actual tax not made until after bankruptcy petition filed); cf. In re Members Warehouse, Inc., 991 F.2d 116 (4th Cir.1993) (determining debtor’s liability for the payment of North Carolina ad valorem property taxes where hen attached to property on the date of hsting of property.)
While this case involves a property tax liability, in other contexts a tax liability is generally “incurred on the date it accrues, not on the date of the assessment or the date on which it is payable.” In re Bondi’s Valu-King, Inc., 102 B.R. 108, 110 (Bankr.N.D.Ohio 1989) (citation omitted), aff'd on other grounds, 126 B.R. 47 (N.D.Ohio 1991) (federal unemployment taxes); see In re Connecticut Motor Lines, Inc., 336 F.2d 96 *986 (3d Cir.1964) (Pre-code ease dealing with federal taxes arising from wages); see also Otte v. United States, 419 U.S. 43, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974) (withholding taxes); In re Prime Motor Inns, Inc., 144 B.R. 554, 555 (Bankr.S.D.Fla.1992) (income tax based on prepetition sales of assets was not administrative expense; “a tax accrues on the date it is incurred, not the date of the assessment or the date it is payable.” (emphasis in original)); In re O.P.M Leasing Services, Inc., 68 B.R. 979, 983-985 (Bankr.S.D.N.Y.1987) (income tax liability attributable to pre-petition portion of debtor’s fiscal year, determined and paid post petition, was not administrative expense).
In Connecticut Motor Lines, a case decided under the Bankruptcy Act of 1898, § 64a, 11 U.S.C. § 104(a)(1) (1976 ed.), this Court found that taxes arising from wages relating to services rendered prior to the bankruptcy, but paid during the bankruptcy, were not entitled to priority as an administrative expense. This Court reasoned, among other things, that
the employer, in a case in which he was not involved in a bankruptcy proceeding, would have had to pay the wages as employer, under the Internal Revenue Code, even if he were no longer, in actuality, employer. And he would, at the time of payment, have had to pay the accrued taxes, despite his no longer being employer.
336 F.2d at 106; see also Dewsnup v. Timm, 502 U.S. 410, -, 112 S.Ct 773, 779, 116 L.Ed.2d 903 (1992) (courts generally reluctant to assume Congress intended to effect major change in Pre-Code practice in absence of clear indication to contrary).
Here similarly, the taxes were incurred on the date that the property was owned by Columbia Gas as indicated in its May 1, 1991 tax return covering the year ended December 31,1990. It would not have affected the tax liability of Columbia Gas under West Virginia law if its property in West Virginia had been sold or destroyed after the ownership of the property in 1990 had fixed liability.
The ownership of the property in 1990, the event giving rise to the property tax, like the taxes arising from wages in Connecticut Motor Lines, occurred before the petition for bankruptcy had been filed. Based on West Virginia law, we conclude that the property taxes were incurred pre-petition, even though the amount of tax had not yet been determined. Accordingly, the property taxes are not entitled to administrative expenses under section 503(b)(l)(B)(i), and the order of the district court will be affirmed.

. Section 507(a) of the Bankruptcy Code provides in pertinent part:
(a) The following expenses and claims have priority in the following order:
(1) First, administrative expenses allowed under section 503(b) of this title....
(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
(B) a property tax assessed before commencement of the case and last payable without penalty after one year before the date of the filing of the petition.
Since the Taxes at issue here had not been assessed at the time TCO filed its petition in bank-raptcy, it is undisputed that the Taxes are not a priority tax under section 507(a)(7).

. The legislative history does not clearly set forth when a properly tax is incurred. Proposed section 346(a), a provision that was not included in the Bankruptcy Code, merely states that “a tax on or measured by ... use of property ... or other transactions or events shall be considered incurred on the date of such transaction or event.” S. 2266, Calendar No. 1026, Reprinted in Collier on Bankruptcy, Appendix Volume 3, pp. VII-344 to VII-345 (15th ed. 1993); see also 124 Cong.Res. 34016 (Oct. 5, 1978) (Sen. DeConcini) (enacted Bankruptcy Code adopted substance of definition in section 346(a)).